# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RANDOL DEAN RUSSELL, | ) | Case No. 06-21346-drd7 |
| Debtor. | ) | Chapter 7 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| DAVID HELFANT, as Guardian of the Person | ) | Adversary No. 07-02011-drd |
| and Property of FREDERICK GORDON | ) | |
| STECKLER, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| RANDOL DEAN RUSSELL, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Motion for Summary Judgment filed by David Helfant ("Plaintiff"), as guardian of the person and property of Frederick Gordon Steckler, against Randol Dean Russell ("Defendant" or "Debtor"). Plaintiff seeks that the debt owed to his ward, the now deceased Frederick Gordon Steckler ("Steckler"), be deemed nondischargeable under 11 U.S.C. § 523(a)(4). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment.

## I. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## II. FACTUAL BACKGROUND

The following factual summary was gleaned from the pleadings and motions submitted and constitutes this Court's Finding of Facts.[1]

The Supreme Court of New York County, New York, adjudicated Steckler an incompetent in 1977. (Compl. ¶ 5(A); Pl.'s Aff. Exhibit "H.") Plaintiff was appointed as successor committee, or guardian, of Steckler's property in 1986, and Defendant was appointed as successor guardian of Steckler's person in 1990. (Pl.'s Aff. ¶ 3.) In his capacity as Steckler's

---

[1] Plaintiff's Motion for Summary Judgment did not comply with Local Bankruptcy Rule 9013-1.H.1., which requires that "[t]he suggestions in support of a motion for summary judgment shall begin with a concise statement of uncontroverted material facts" and that each fact be set out "in a separately numbered paragraph." Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment included an amendment to the original motion, titled Plaintiff's Affidavit in Support of Motion for Summary Judgment. This Court finds that the amended version of this motion for summary judgment materially complies with Local Bankruptcy Rule 9013-1.H.1, and to the extent that the amended motion does not comply with the local rule this Court waives any such deficiencies. Defendant did not dispute, in his response, the material facts asserted in the motion for summary judgment.

personal guardian, Defendant submitted semi-annual written reports to Plaintiff detailing expenses Defendant incurred in caring for Steckler. (Pl.'s Aff. ¶ 8.) The reports itemized Defendant's periodic visits to Steckler's group home and long distance phone calls incurred in caring for Steckler, and, as the custodian and guardian of Steckler's property, Plaintiff reimbursed Defendant for his reported expenses. (Compl. ¶ 5(D).)

Upon discovering that Defendant had only visited Steckler in his group home one time since 1996 and had not called to check on his condition for several years (Pl.'s Aff. ¶ 11; Williams' Aff. at 2), Plaintiff demanded repayment of approximately $23,000 in fees and expenses paid to Defendant from December 31, 1996 to December 31, 2002 (Pl.'s Aff. ¶¶ 7, 8 & Exh. "C" ¶ 1.3). Plaintiff and Defendant entered into a Settlement Agreement, as of February 16, 2004, that required Defendant pay the sum of $23,089.35 to Plaintiff, as Successor Committee of the Property of Frederick Gordon Steckler, in forty-seven consecutive monthly installments. (Pl.'s Aff. Exh. "C" ¶ 2.1.) Plaintiff alleges that Defendant still owes $11,000 to Steckler's estate based on that settlement (Compl. ¶ 5(D); Pl.'s Aff. ¶ 2) and that Defendant's conduct constituted a defalcation while acting in a fiduciary capacity (Pl.'s Aff. at 6).

Defendant was discharged as Steckler's guardian of his person in 2004 by the Circuit Court of Calloway County, Missouri, Probate Division, and Plaintiff was appointed successor guardian in Defendant's place. (Pl.'s Aff. ¶ 3.) Steckler subsequently died intestate on June 12, 2006. (Pl.'s Aff. ¶ 16; Williams' Aff. at 1.) Though Plaintiff has filed a petition for administration of Steckler's estate with the Surrogate's Court, New York County, that court has not yet appointed an administrator to the estate as of the date of this order. (Pl.'s Aff. ¶ 16.)

### III.  DISCUSSION AND LEGAL ANALYSIS

### A.  The Plaintiff's Standing to Sue

Before it can resolve the merits of the motion for summary judgment, this Court must first determine whether the Plaintiff has standing to sue. Federal Rule of Civil Procedure 17 establishes standing for federal court adversary proceedings and applies to bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 7017.  Rule 17(c) states that "[w]henever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person."  Fed. R. Civ. P. 17(c).  The paragraph further states, "[a]n infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."  *Id.*

Since the Supreme Court of New York County appointed Plaintiff as guardian of Steckler's property, that State's laws control what party serves as the representative sufficient to commence and maintain this adversary action.  New York's civil procedure rules state that "a person judicially declared to be incompetent shall appear by the committee of his property, and a conservatee shall appear by the conservator of his property." N.Y. C.P.L.R. 1201 (McKinney 2007).  While the general rule holds that the incapacitated person's death effectively ends a guardianship, the statutory provisions remain unclear as to exactly *when* "a fiduciary whose ward has died must surrender responsibility for the ward's assets." *In re Estate of Baron*, 691 N.Y.S.2d 882, 883-84 (N.Y. Sur. Ct. 1999) (holding also that "absent special circumstances, the authority of a conservator or guardian terminates immediately upon the ward's death").  Moreover, a guardian's duties do not immediately and completely terminate upon the ward's death, as a guardian of a person's property must

4

> 14. pay the funeral expenses of the incapacitated person; . . . 19. pay bills after the death of the incapacitated person provided the authority existed to pay such bills prior to death until a temporary administrator or executor is appointed; and 20. *defend or maintain any judicial action or proceeding to a conclusion until an executor or administrator is appointed*.

N.Y. Mental Hyg. Law § 81.21(a) (McKinney 2007) (emphasis added); *see also* § 81.36(e) (stating "[i]f the incapacitated person dies, the guardian shall provide for such person's burial or other disposition the cost of which shall be borne by the estate of the incapacitated person").

The question remains however whether a guardian's duties to his or her ward continue beyond the ward's death if the State court has not yet appointed an administrator or executor to the estate. Perhaps most instructive on this issue are two New York precedents that allowed guardians to continue representing their deceased wards beyond their respective deaths. In *In re Accounting by Artuso ex rel. Estate of Gargaro*, No. 2001 DT 01676/A, 2004 WL 1467168, at *1 (N.Y. Sur. Ct. 2004), *rev'd on other grounds*, 804 N.Y.S.2d 214 (N.Y. App. Div. 2005), despite the ward's death during a pending civil matter, the guardian was allowed to continue litigation against a prior guardian for conversion of the ward's assets and breach of fiduciary duty. In addition, in *In re Saphier*, 637 N.Y.S.2d 630, 632-33 (N.Y. Sup. Ct. 1995), the court continued a special guardianship beyond the ward's death to ensure *someone* would be able to secure the return of a valuable musical instrument, as an investigation into the instrument's disappearance had commenced and was ongoing at the time.

This Court holds that Plaintiff has standing as the representative of Steckler's estate given his continuing, statutory obligations to his deceased ward pursuant to New York law and the fact that the court which appointed Plaintiff as guardian of Steckler has not yet discharged those obligations or appointed another representative of the estate in his stead. *See* §§ 81.21(a), 81.36(a).

5

### B.  The Debtor/Defendant Did Not Act in a Fiduciary Capacity

Plaintiff objected to the discharge of Defendant's remaining $11,000 debt to Steckler, arguing that the debt resulted from a defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4) (2006).  Plaintiff, however, failed to establish that the Defendant was "acting in a fiduciary capacity" as defined by the Bankruptcy Code, and this Court denies the motion for summary judgment.

Statutory exceptions to discharge are narrowly construed.  *Werner v. Hofman*, 5 F.3d 1170, 1172 (8th Cir. 1993).  The term "fiduciary" in particular is much more narrowly defined in bankruptcy than at common law.  *See* 4 Collier on Bankruptcy ¶ 523.10[1][d] (15th ed. rev. 2007); *see also Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 380 (Bankr. D. Kan. 1997) (holding that "[t]he general fiduciary duty of loyalty, good faith, and fair dealing is insufficient to bar discharge of a debt under § 523(a)(4)").  The exception at § 523(a)(4) precluding the discharge of "any debt . . . for fraud or defalcation while acting in a fiduciary capacity" applies *only* to express or technical trusts.  *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997).  "[I]t takes more than a 'merely contractual relationship' to establish the existence of a fiduciary relationship.  The parties must declare their intent to create a trust followed by the creation of the trust and a trust res."  *Mo-Kan Iron Workers Pension Fund v. Engleman (In re Engleman)*, 271 B.R. 366, 369-70 (Bankr. W.D. Mo. 2001).

While the issue of whether a fiduciary relationship exists for purposes of § 523(a)(4) is a federal question, "[b]ankruptcy courts regularly look to state law to determine whether a fiduciary capacity exists."  *In re Ziadeh*, 284 B.R. 893, 899 (Bankr. N.D. Iowa 2002).  Besides those created by formal trust agreement, express and technical trusts also include those

6

"relationships in which trust-type obligations are imposed pursuant to statute or common law." *In re Cook*, 263 B.R. 249, 255 (Bankr. N.D. Iowa 2001). Missouri law defines a trust as "'a fiduciary relationship with respect to *property*, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.'" *Masterson v. Plummer*, 343 S.W.2d 352, 355 (Mo. Ct. App. 1961) (quoting Restatement (Second) of Trusts § 2 (1959)) (emphasis added). Whether a Missouri fiduciary relationship constitutes "fiduciary capacity" for bankruptcy purposes is thus based on whether that relationship is one of a trust involving property.

Though Collier's provides a list of those relationships commonly perceived as meeting the definition of "acting in a fiduciary capacity" and includes the guardian-ward relationship amongst those that qualify, all the cases cited involve guardians of an incompetent's property, rather than simply guardian of the person. 4 Collier on Bankruptcy ¶ 523.10[1][d]; s*ee, e.g.*, *In re Dauterman*, 156 B.R. 976 (Bankr. N.D. Ohio 1993); *Ala. Nat'l Bank of Montgomery v. Beach (In re Beach)*, 13 B.R. 759 (Bankr. M.D. Ala. 1981); *Aetna Ins. Co. v. Byrd (In re Byrd)*, 15 B.R. 154 (Bankr. E.D. Va. 1981). One case that did evaluate the fiduciary capacity of a guardian solely of the person, and not also guardian of the property, held that the personal guardian's obligation to her ward "did not fall within the nondischargeability provision of the Bankruptcy Code governing debts incurred while a debtor committed fraud or defalcation while acting in a fiduciary capacity where neither an agreement nor relevant statutes indicated the presence of an express trust relationship between the guardian of person and the ward." *In re Hiner*, 94 B.R. 955 (Bankr. N.D. Ohio 1988). In the state of Missouri, two separate statutes establish the respective duties and powers of guardians of the person and guardians of the property, the latter

labeled "conservator of the estate." Rev. Mo. Stat. §§ 475.120, 475.130.  While the statutory duties for conservators of the estate in Missouri are extremely detailed and relate to their duties in relation to the ward's property, the duties of guardians of the person reflect more general duties of care and do not impose any "trust-like obligations" on the guardian.  *See* Rev. Mo. Stat. §§ 475.120, 475.130.

Another case that reflects a similar distinction between finding a fiduciary relationship within the meaning of § 523(a)(4) and not, depending on whether property itself is at issue in the relationship, is *In re Ingeneri*, 321 B.R. 601 (Bankr. D. Me. 2005).  In that case, the court found

> It is the entrustment of property which superimposes a technical trust upon the attorney-client relationship and it is the existence of a technical trust which places the lawyer in a fiduciary capacity.  Consequently, the exception to discharge under § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity" will not apply to a lawyer unless he or she has been entrusted with funds or property.

*Ingeneri*, 321 B.R. at 604-05.

Plaintiff urges this Court to find Defendant acted in a fiduciary capacity simply based on the fact that Defendant was Steckler's "guardian" and presents no evidence suggesting that the relationship constituted an express or technical trust.  To the contrary, Plaintiff argues that "[t]he term fiduciary capacity 'is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, *a guardian* (emphasis added), executor or broker, a director of a corporation and a public officer.'"  (Pl.'s Reply to Def.'s Response to Pl.'s Motion for Summary Judgment 2 (citation omitted).)  That is simply not the law in this Circuit.  Without further evidence establishing that Defendant's relationship with Steckler consisted of something more than simply guardian of his person and contained trust-type obligations, the Plaintiff has not demonstrated that he is entitled to judgment on his claim that Defendant acted in

8

a fiduciary capacity with respect to his ward, Steckler, pursuant to § 523(a)(4) of the Bankruptcy Code.[2]  Plaintiff's motion for summary judgment is, therefore, denied.

## IV.  CONCLUSION AND ORDER

For the reasons stated above, the Court denies Plaintiff's Motion for Summary Judgment. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

    /s/ Dennis R. Dow
THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE

Date:   October 16, 2007


Copies to:
David Helfant
J. Brian Baehr

---

[2] As a result of its findings and conclusion on the issue of fiduciary capacity, the Court need not consider whether Defendant's conduct was such that he would be guilty of fraud or defalcation.